**LEATHER'S BEST, INC., Plaintiff,**

v.

**UNITED STATES, Defendant.**

**Court No. 77-10-04197.**

United States Court of
International Trade.

Oct. 8, 1982.

Mandel & Grunfeld, New York City (Steven P. Florsheim and Robert B. Silverman, New York City, at the trial and on brief), for plaintiff.

J. Paul McGrath, Asst. Atty. Gen., Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office, Commercial Litigation Branch, Washington, D.C. (Barbara M. Epstein, Wantagh, N.Y., at the trial and on brief), for defendant.

FORD, Judge:

Plaintiff has instituted this action to obtain duty free treatment for certain leather under provisions of the General System of Preferences (GSP), as set forth in Headnote 3(c) of the General Headnotes and Rules of Interpretation of the Tariff Schedules of the United States. The merchandise was classified under item 121.57, TSUS (1976 entries) or 121.58 (1977 entries) TSUS, as modified by T.D. 68-9 as other leather, not fancy, and assessed with duty at 5 per centum ad valorem.

Plaintiff contends the leather, which was subjected to one of two embossing processes, is fancy leather within the definition contained in Schedule 1, Part 5, Subpart A, headnote 1(b) and which is subject to classification under item A121.65, TSUS, and accordingly entitled to entry free of duty under the GSP provisions. The leather was embossed either with a "hair cell" pattern or was smooth plated on an embossing machine. The former produced an artificial cattle hair cell type pattern and the latter flattened the natural hair cell pattern and created a smoother and glossier appearance.

The pertinent statutory provisions are as follows:

Leather, in the rough, partly finished, or finished:
    \*   \*   \*   \*   \*   \*   \*
  Other
    \*   \*   \*   \*   \*   \*   \*
    Other
      Not fancy:
    \*   \*   \*   \*   \*   \*   \*

121.58 (121.57)    Other . . . . . . . . . . . . . . . . . . . . . . .5% ad val.
    \*   \*   \*   \*   \*   \*   \*
      Fancy:
    \*   \*   \*   \*   \*   \*   \*

121.65    Other . . . . . . . . . . . . . . . . . . . . . . .Free

Schedule 1, Part 5, Subpart A:
*Subpart A headnotes:*

1. For the purposes of this subpart—
    \*     \*     \*     \*     \*     \*

(b) the term *"fancy"*, as applied to leather, means leather which has been embossed, printed, or otherwise decorated in any manner or to any extent (including leather finished in aluminum, gold, silver, or like effects and leather on which the original grain has been accentuated by any process).

    \*     \*     \*     \*     \*     \*

This action was the subject of cross-motions for summary judgment which were denied on May 27, 1981. Plaintiff in the above motions abandoned the following entries which are hereby dismissed:

| Entry Number | Date of Entry |
|---|---|
| 109889 | 10/8/76 |
| 158394 | 11/16/76 |
| 144452 | 11/5/76 |

The record herein consists of the testimony of five witnesses, two called on behalf of plaintiff and three by defendant. Eighteen exhibits were received in evidence for plaintiff and two for defendant. The evidence establishes the imported bovine leather has been embossed. Exhibits 6, 8, and 10 are representative samples of the imported merchandise. Exhibits 6 and 8 are hair cell embossed while exhibit 10 is a sample of smooth plated leather. The same merchandise, not hair cell embossed, is represented by exhibits 7 and 9, and exhibit 11 represents merchandise similar to exhibit 10 except for the smooth plating.

The leather was fully tanned prior to the hair cell embossing or the smooth plating. The tanning process requires the rawhide as received in the tannery to be dehaired and defleshed. It is then put in solutions which impart the characteristics to the hide. The split and grain side is placed in a drum where it is colored, after which it is removed and dried. At this point the hair cell embossing or smooth plating takes place after which the leather is wrapped and shipped to the United States. In order to emboss the leather, it is placed in an embossing machine and a plate, either with a design or plain, is utilized under heat and pressure to imprint the design or smooth pattern on the leather. The purpose of utilizing hair cell embossing is to imprint a more uniform and permanent grain design which in turn improves the cutability of the leather. The hair cell embossing hides tick bite marks and other defects and blemishes, while smooth plating increases the glossiness and smooths the leather. According to plaintiff's witnesses both processes decorated and also enhanced or beautified the leather. Defendant's witnesses, Loewengart and Gunnerfos, while admitting the leather was embossed, denied the leather was decorated or its appearance enhanced or beautified.

Based upon the record plaintiff contends the imported hair cell embossed leather and the smooth plated leather fall within the definition of fancy as set forth, supra. Defendant takes the position that embossing alone is not sufficient since the definition of fancy provides "embossed, printed or otherwise decorated" and therefore requires the leather to be decorated.

The question of whether the leather is decorated varied with the witnesses. Plaintiff's witnesses considered the leather decorated or enhanced in appearance while defendant's witnesses, Loewengart and Gunnerfos, denied the imported leather was decorated, based upon the small amount of design applied. However the definition states, "or otherwise decorated *to any extent*". This obviously does not require the embossing to be extreme such as in plaintiff's exhibit A. Defendant's witness Bailey relied upon the definition of embossed leather as set forth in ASTM Standard Definitions of Terms Relating to LEATHER, D 1517–67 (defendant's exhibit B) which requires the leather be "ornamented with a geometrical or fancy design by heavy pressure in a machine".

The definition of fancy leather in the ASTM Standards (Defendant Exhibit B) provides as follows:

fancy leather—leathers made from hides and skins of all kinds that have commercial importance and value primarily because of grain, or distinctive finish, whether natural or the result of processing. Such processing may be graining, printing, embossing, ornamenting (including in gold, silver, and aluminum finishes), or any other finishing operation enhancing the appeal of leather.

[P. 118.]

The above definition is broader than intended by Congress as is evidenced by the following legislative history in the Tariff Classification Study (1960), Schedule 1:

In the proposed schedule on which public hearings were held, the existing distinction between the regular leathers and the so-called "fancy" leathers was eliminated. Paragraph 1530(d), as originally enacted, imposed a rate of 30 percent *ad valorem* on fancy leathers, but this rate has been reduced under trade agreement negotiations to 12.5 percent. This provision has been troublesome. Under this broad classification is included in both trade and popular terminology a group of heterogeneous leathers for which it is very difficult to find a suitable definition. The Tariff Act of 1930 provides for "Leather * * * grained, printed, embossed, ornamented, or decorated * * * or by any other process (in addition to tanning) made into fancy leather." In 1930, these effects were obtained by mechanical manipulation of the leather after tanning, but some of these effects are now achieved by newly developed chemical reactions in the tanning process. Appraising officers find it extremely difficult to determine whether some of the "fancy effects" in leather have been created in the tanning process or in additional operations. The suggestion has been made by several customs officers that a better definition be written into the law or that the distinction be eliminated. In view of the protests received at the hearing against the duty reductions of 2.5 percent *ad valorem* which would result for some fancy leathers, provisions have been reinstated for fancy leathers at the existing rate where there are now rate differentials (items 121.45 and 121.60) and "fancy" leather has been redefined in headnote 1(b).

From the foregoing it is apparent the definition of fancy leather contained in TSUS was to aid customs in determining whether the effects of graining, embossing, printing, etc. was accomplished by tanning or after tanning by additional processes. The involved merchandise was the result of an additional process, i.e., embossing, and hence falls within the term fancy. In *Herman Lowenstein v. United States,* 24 CCPA 163, T.D. 48641 (1936), the Court of Customs and Patent Appeals (now the United States Court of Appeals for the Federal Circuit) discussed the decision in *United States v. John B. Stetson,* 21 CCPA 3, T.D. 46319 (1933). The portion of the decision set forth below, while involving paragraph 1530(d) of the Tariff Act of 1930, the predecessor of the provision under consideration, is nevertheless pertinent and equally applicable to the case at bar.

We are unable to agree with the view of counsel for the appellee in their construction of the language of said paragraph 1530(d). Here we find an enumeration of several kinds of leather which are to be classified thereunder, and these are designated *eo nomine:* Grained leather, printed leather, embossed leather, ornamented leather, and decorated leather. If the involved leather be of any one of these varieties it is within the subparagraph, because the Congress has so specifically provided. Nor can we agree with the view that the language "*or by any other process* (in addition to tanning) *made into fancy leather,*" removes "grained" leather from the subparagraph, unless it be also known as "fancy." The use of the language 'or by any other process' (in addition to tanning)" indicates plainly, in our view of the matter, that the Congress, having enumerated what it considered to be fancy leather, was providing a general clause which would make it possible to include therein any leathers made fancy, by any other process than those already enumerated. To hold otherwise would be to make it possible to remove any leather, such as "embossed," for example, from the purview of the subparagraph by proof that it was not commercially or commonly known as "fancy" leather.

"Or by any other process," in its ordinary grammatical construction as a part of the sentence in which it is found, obviously refers to any other process than graining, printing, embossing, ornamenting, or decorating, as there are no other antecedents to which the phrase may grammatically refer.

In other words, the Congress has by this subparagraph named 'grained' leather as one variety of fancy leather for tariff purposes.

Pursuant to this discussion we held the imported goods to be within the purview of said paragraph 1530(d) rather than as contended by the importer.

The phrase "or by any other process" in the above has the same contextual meaning as "or otherwise decorated" in the TSUS. Therefore it is not necessary to establish that embossed leather is also decorated.

In view of the foregoing, I find the imported leather to be fancy and subject to classification under item A121.65 as claimed by plaintiff. The merchandise being subject to classification thereunder is entitled to entry free of duty by virtue of being subject to treatment under GSP.

Judgment will be entered accordingly.

## JUDGMENT

This case having been duly submitted for decision and the Court, after due delibera-tion, having rendered a decision herein; now, in conformity with said decision,

IT IS HEREBY ORDERED, AD-JUDGED, and DECREED: that the merchandise classified under item 121.57 or 121.58 of the Tariff Schedules of the United States and assessed with duty at 5 per centum ad valorem is properly subject to classification under item A121.65, TSUS, and entitled to entry free of duty. All claims as to merchandise covered by the following are dismissed:

| Entry Number | Date of Entry |
|---|---|
| 109889 | 10/8/76 |
| 158394 | 11/16/76 |
| 144452 | 11/5/76 |

The Regional Commissioner at the Port of New York shall reliquidate accordingly.