**LEATHER'S BEST, INC., Appellee,**

v.

**The UNITED STATES, Appellant.**

**Appeal No. 83–594.**

United States Court of Appeals, Federal Circuit.

June 10, 1983.

Barbara M. Epstein, New York City, argued, for appellant. With her on the brief were J. Paul McGrath, Asst. Atty. Gen., David M. Cohen, Director, Joseph I. Liebman, Atty. in Charge Intern. Trade Field Office, New York City, of counsel.

Steven P. Florsheim, New York City, argued, for appellee. With him on the brief was Robert B. Silverman, New York City, of counsel.

Before NICHOLS, KASHIWA and NIES, Circuit Judges.

NICHOLS, Circuit Judge.

This appeal by the government requires us to review a decision of the Court of International Trade (CIT) holding that certain protested entries of finished leather described in the testimony and illustrated in the exhibits as "embossed" or "smooth plated," were "fancy." *Leather's Best, Inc. v. United States,* —— C.I.T. ——, 555 F.Supp. 1064 (1982). We *affirm.*

*Competing Tariff Provisions*

Classified:
Leather, in the rough, partly finished, or finished.
    Other * * *
      Other * * *

Not fancy
121.57 (1976 entries) Other * * * 5% ad val.
or 121.58 (1977 entries)
Claimed:
    Fancy * * *
      Other * * * free

"Fancy" leather would normally be dutiable at a higher rate, but if the product of certain listed "developing" countries, by General Headnote 3(c) it is entitled to free entry under the General System of Preferences (GSP). It is not denied, that if "fan-cy," the instant leather obtains free entry. The government in this appeal maintains a position that often would be to its disadvantage.

The word "fancy" is defined in *Subpart A,* headnotes—

1. For the purpose of this subpart * * *
(b) the term "fancy" as applied to leather means leather which has been embossed, printed, or otherwise decorated in any manner or to any extent (including leather finished in aluminum, gold, silver, or like effects and leather on which the original grain has been accentuated by any process).

\*    \*    \*    \*    \*    \*

*The Merchandise Involved*

The testimony agreed, and the trial court found, that the leather had been "embossed" by one or the other of two processes. Some was "hair cell embossed." Some was "smooth plated." Government witnesses opined it was not "decorated." All was "bovine" leather fully tanned before the embossing process, dehaired and defleshed before the tanning. The tanning solutions impart characteristics to the hide. In the embossing process, a plate utilizes heat and pressure to imprint the design or smooth print upon the leather. The purpose of utilizing hair cell embossing is to imprint a more uniform and permanent grain design which improves the "cut-ability," *i.e.,* eliminates some of the useless scrap otherwise generated in manufacture of finished articles. It hides tick bite marks and other defects and blemishes. Smooth plating increases the glossiness and smooths the leather.

By the appellee's testimony which the trial court adopted, leather processed on an embossing machine is embossed. Also, by appellee's testimony, the smooth plating, as well as the hair cell embossing, is done on such an embossing machine though with different plates. We therefore call both types embossed, though there may be some semantic confusion as to the point. As we show later, it does not affect the result.

To our untutored eyes, the difference between the imports, and a similar tanned leather before going on the embossing machine, is not very marked. However, the experts had no difficulty confirming by inspection of the leather that it had in fact been through the machine, and it hardly could be pretended that this determination would present any difficulty to the officers of the customs, whose expertise is well known. (None of the experts who actually testified were themselves customs officers.)

## Opinion

Since the fact findings of the trial court have ample support in the record, the issue here is wholly and simply how to interpret the headnote. Appellant contended and contends here that the definition of "fancy" requires that the leather be "embossed" *and* "decorated," *i.e.*, that something be added in the embossing process that visibly ornaments or beautifies the leather. The trial court read the words "otherwise decorated in any manner or to any extent" as meaning that the enhanced appeal of the leather resulting from embossing need be but minimal. A definition of "fancy" by the ASTM was in evidence, but the trial court rejected it as too narrow because of the legislative history.

The history actually consists of comments by the then Tariff Commission (now ITC), in its Tariff Classification Study (1960) Schedule 1. This document was revised, and enacted by Congress as revised, to be the Tariff Schedules of the United States (TSUS), but the revisions do not affect the headnote we must construe. The Commission pointed out that the tariff provision for fancy leather then in effect was ¶ 1530(d) of the Tariff Act of 1930, which provided for—

Leather * * * grained, printed, embossed, ornamented, or decorated * * * or by any other process (in addition to tanning) made into fancy leather.

It said it had received complaints by customs officers that the mechanical effects by which the tanned leather had subsequently been made "fancy," as known in 1930, were now (1960) achieved sometimes by "newly developed chemical reactions in the tanning process." It was extremely difficult for a customs officer to tell whether the leather he saw, if it looked "fancy" had been made so "in addition to," *i.e.*, subsequent to, the tanning itself. The Commission initially had proposed to eliminate this difficulty by eliminating the category of "fancy" leather altogether. This generated protests against the duty reduction that would result for the "fancy" category. So the Commission decided to restore the separate and higher rate for "fancy" leather, and to provide a new headnote defining the term. That purpose was effectuated and nothing in the present definition makes it necessary to determine *when* the improvements to make the leather "fancy" have been applied, or *how*.

The controversy here does not turn on *when* the embossing was applied. There is no question it was applied after the tanning. Nor does it turn on *how*. There is no question it was by a mechanical process, not by chemistry in the tanning itself. Thus the problems the definition changes were made to cope with do not exist in this case. We have a situation as to which the 1930 definition created no difficulty, and the inference can readily be drawn that the Commission had no intent to change the prior law. The new language does not support, by its plain language, any contrary conclusion. The Commission did not intend to withdraw from the scope of the "fancy" classification any leather that previously had come within it. The trial court's conclusion that the changes were to assist customs officers is true but irrelevant. Any conclusion, based on the changes, that a leather previously "fancy" ceased to be so under TSUS, founders in view of the history showing that if the changes did anything, it was to make it easier to conclude that leather was "fancy," but even this change was respecting an issue irrelevant to the case we have at bar.

Normally, the exclusion from the "fancy" category of a kind of leather previously included, would result in a rate reduction.

Normally, tariff rate reductions result from international trade agreement negotiations. The TSUS was not intended to supersede such negotiations by a unilateral determination. Its purpose was to clarify and simplify the United States tariff schedules, then the world's most complex, to aid administration by United States Customs, understanding of the duty liabilities they were to incur by importers, and appreciation by trade agreement negotiators what the real effect would be of what they negotiated. At times simplification by consolidation of previously separate items was expected to be accompanied by rate reductions. But the Tariff Commission was supposed to retreat if publication of the proposed new schedules revealed that a significant interest group was adversely affected. That is exactly what happened here. The proposed elimination of the "fancy" category did affect an interest group, so the Tariff Commission retreated to a position that involved less simplification, but also less interference with protection expectations. When the animals had thus been stirred up, it would be most surprising to find in the end result any significant tariff rate reduction. Yet that is what appellant would have us believe occurred. It would have us hold that the new definition, unlike paragraph 1530(d) of the 1930 Act, included as "fancy" only leathers that were both (a) embossed, and (b) decorated. That the prior law was contrary is too clear to be argued.

The trial court correctly cites *Lowenstein v. United States,* 24 CCPA (Customs) 1963 (1936) and *United States v. John P. Stetson Co.,* 21 CCPA (Customs) 3 (1933). The following quote from the latter case, at 7, is dispositive:

Here [in para. 1530(d)] we find an enumeration of several kinds of leather which are to be classified thereunder, and these are designated eo nomine: Grained leather, printed leather, embossed leather, ornamented leather, and decorated leather. If the involved leather be of *any one* of these varieties it is within the subparagraph, because the Congress has so specifically provided. [Emphasis supplied.]

There is much more said, but nothing to alter the result. Clearly the leather was "fancy" if it was "embossed" *or* if it was "decorated." Would that we judges today could occasionally be as positive in our statements as our predecessors frequently were! The trial judge, however, comes out at the end with his conclusion in the fine old manner—

Therefore it is not necessary to establish that embossed leather is also decorated.

We agree. Any speculations along the way as to whether a scintilla of "decoration" can be found in this leather may be disregarded as unnecessary to the result. If, however, it is supposed doubtful if the smooth plated leather is embossed, the government's own witness said the process made it "brighter," which we consider to be at least a scintilla of decoration, all that is required.

AFFIRMED.